UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PATRIOT HOMES, INC. and ) | | |
| PATRIOT MANUFACTURING INC., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | CAUSE NO. 3:05-cv-471 AS |
| ) | | |
| FOREST RIVER HOUSING, *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |

**REPORT AND RECOMMENDATION**

I.    Introduction

On August 5, 2005, the Plaintiffs Patriot Homes, Inc. and Patriot Manufacturing (hereafter Patriot) filed their complaint and motion for a preliminary injunction. On August 24, 2005, the Honorable Allen Sharp conducted a status conference on the Plaintiffs' motion for a preliminary injunction and referred that motion to the undersigned pursuant to 28 U.S.C. §§631-639, to conduct an evidentiary hearing and issue a Report and Recommendation. After a brief period of discovery, an evidentiary hearing was held on the Plaintiffs' motion for preliminary injunction on October 3, 2005 and on October 11, 2005. The following Report and Recommendation is based upon the record of this case which includes the pleadings, the motions, and briefs of the parties, as well as the evidence developed at the hearing, and the arguments of counsel.

II.    Procedural Background

In late 2004 and early 2005, several key Patriot employees, including the four named Defendants of this lawsuit, left Patriot and joined Sterling, a subsidiary of Forest River Housing. Patriot charges that the four former employees took with them certain proprietary information,

violated the Plaintiffs' copyrights, and disclosed the trade secrets of their former employer, Patriot, with their new employer, Sterling.

Plaintiffs initially filed a lawsuit in Elkhart County Superior Court, and on August 5, 2005, the Plaintiffs filed the present lawsuit in this court alleging a violation of the Computer Fraud and Abuse Act, (CFAA) 18 U.S.C. § 1030 (2000), copyright infringement pursuant to 17 U.S.C. § 501 (2000), and the improper disclosure and use of the Plaintiffs' trade secrets. Initially, this dispute was proceeding simultaneously in both the state and federal courts. As of this writing, it is unclear whether the parties continue to litigate in the state court or whether that action has been stayed by that court, by order or the agreement of the parties.

The Plaintiffs base jurisdiction on 28 U.S.C. § 1338(a) (2000) and 28 U.S.C. § 1331 (2000), alleging a violation of the CFAA and their federally protected copyrights. However, the Defendants have challenged this court's jurisdiction and have filed a motion to dismiss pursuant to FRCP 12(b)(1). That motion is now fully briefed and pending before the Court. Because that motion has not been referred to the undersigned, it is not the subject of this Report and Recommendation.

III.   Facts

In early 2005, the four individual Defendants, Brent Raifsnider, William Milliken, Steven Ryker and Daniel Reed, left the employ of Patriot and went to work for the Defendant, Sterling.[1] All had been high level employees at Patriot. Raifsnider had been the General Manager, Milliken the Modular Engineering Manager, Ryker a Production Engineer and Reed the Sales

---

[1] Apparently Sterling, a new company, was attempting to "get up and running" as soon as possible and hired very senior employees from Patriot to expedite their entry into the market.

Manager.[2]  As key employees of the Plaintiff, these Defendants had access to the Plaintiffs' most sensitive information and copyrights.

Following the executive exodus, the Plaintiffs hired a forensic computer analyst, Robert Avie, to determine if, and to what extent, the Defendants had copied the Plaintiffs' sensitive proprietary information to their own computer systems.  Avie testified that his analysis of the Defendant's computer system revealed that hundreds of the Plaintiffs' computer files had been downloaded and copied to Sterling's computer system.  Specifically, Avie found Patriot information in every single system he analyzed at Sterling and determined that at least 237 AutoCAD drawing files were taken from Patriot to Sterling.  Avie discovered that Patriot's AutoCAD drawing folder was also copied at several systems at Sterling, backed up, and modified to include Sterling's title block.

Avie also performed a Hash analysis, which compares the numerical values of two files.  If those values match, it can be concluded with "extreme certainty" that one file is an exact copy of another.  Avie found approximately 424 files at Sterling that matched Patriot files, and he visually reviewed approximately 200 of these files, presenting the Court with "representative samples." Avie also performed a Key Word Search, searching for the words "Energymate" and "Patriot" in Sterling's files within the binary data. Almost 800 Sterling computer files have the word "Patriot" in them.

Avie's testimony was largely unrefuted and convincingly established that someone had downloaded and copied hundreds of the Plaintiffs' computer files and installed them into the Defendant's computer system.

---

[2]Although not a defendant in this action, Patriot's Production Manager also joined his four colleagues at Sterling.

3

Patriot has copyrighted six of its floor plans as "technical drawings." While the Defendant's challenge the validity of the copyrights, no evidence was presented that would invalidate them. Rather, the Defendants attempted to rebut the presumption of validity of only two of the six copyrights, arguing that Patriot's 5856 is a copy of Hart Housing model 42019, and Patriot's 3933 is a copy of a Unibilt model. The remaining copyrights were unchallenged.

The Defendants do not really challenge the essential facts;[3] that key employees of Patriot left Patriot and now work for Sterling, or that hundreds of Patriot's computer files containing sensitive proprietary information were found on the Defendant's computer system. Rather, the Defendants offer legal arguments that (1) the CFAA is not applicable to these facts, (2) the copyrights were not valid, and (3) the information contained in the computer files were not trade secrets and are not legally protected materials. The Defendants also argue that when they learned of the misappropriated computer files, they isolated the material and created a "clean room" where no Patriot material was to be used. Indeed, Sterling hired T. R. Arnold, an outside firm, to write a systems and quality control manual "from scratch", unaffected or "untainted" by the stolen Patriot computer files. The basis for this argument is questionable. Although Roger Kollat, President of Forrest River Housing, testified that the Defendants are not using the materials or data contained on the copied Patriot computer files, another Defendant testified otherwise. In his deposition, Milliken admitted that Sterling is "currently using" Patriot's

---

[3]The Defendants state in their post hearing brief "There is no evidence as to how or why those files came to be on the Sterling computer." Given the fact that those witnesses who would have first hand knowledge refused to answer specific questions on this subject, for fear that the truthful answers might subject them to criminal prosecution, and given Mr. Avie's persuasive and uncontradicted testimony, the court is very comfortable in "connecting the dots" and concluding Patriot's former employees copied and downloaded the computer files and transferred them to Sterling's computer system. For the Defendants to argue "[t]here is no evidence how or why those files came to be on the Sterling computer" is disingenuous at best and insulting at worst.

production drawings and asserted his Fifth Amendment right against self-incrimination when asked whether Patriot's AutoCAD drawings are "currently being used" by Sterling.

IV. Legal Analysis

A plaintiff requesting injunctive relief under Fed. R. Civ. Pro. 65 must demonstrate that:

- A. The plaintiff will be irreparably harmed if the injunction does not issue;

- B. The threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;

- C. The plaintiff has at least a reasonable likelihood of success on the merits; and

- D. The granting of an injunction will not disserve the public interest.

*Reinders Brothers v. Rain Bird Eastern Sales Corp.,* 627 F.2d 44, 48 (7th Cir. 1980).

A. Irreparable Harm

1. Copyright Infringement

With respect to Patriot's copyright infringement claims, "irreparable injury may normally be presumed from a showing of copyright infringement." *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014 (1978); *see also Educational Testing Servs. v. Katzman*, 793 F.2d 533, 543 (3d Cir.1986); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir.1983), *cert. dismissed*, 464 U.S. 1033 (1984).

To establish infringement, Patriot must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991) (*citing Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 548 (1985)). Patriot need not prove damage, or any harm, resulting from the infringement. 1 M. NIMMER, NIMMER ON COPYRIGHT §13.01 (*citing Davis v. The Gap, Inc.*, 246 F3d 152, 159 (2d Cir. 2001)). Patriot has carried

its burden.

Patriot owns six copyrights under Title 17 of the U.S. Code. Title 17 United States Code Section 410(c) provides that:

> [i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court. [17 U.S.C. § 410(c).]

A number of registrations in issue are entitled by statute to a *prima facie* presumption of validity. The remaining copyrights, although not fully within the five-year period to be entitled to an automatic presumption, are all issued to related works, so that any question of their being copyrightable subject matter is contradicted directly by the actions of the Copyright Office. Copyrightability of the subject matter has been clearly established by the Copyright Office's grant of the Certificates and based on the Copyright Office's judgment. As a consequence, "[t]he burden therefore rests on the defendant to prove the invalidity of plaintiff's copyright." (*citing Oboler v. Goldin*, 714 F.2d 211 (2d Cir. 1983); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985)); *see also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985), *cert. denied* 474 U.S. 1059 (1986)).

The Defendants have failed to meet their burden to prove the invalidity of Patriot's copyrights. Sterling presented no evidence to show that any of Patriot's copyrights are invalid. Patriot's 5856 predates the Hart Housing model 42019 by over four years. No fact in the record supports Sterling's allegation that Patriot based its 3933 on the Unibilt model attached to Reed's declaration.

    2.    <u>Trade Secrets</u>

As for Patriot's trade secret claims, monetary damages are inadequate for several reasons. First, once Patriot's trade secrets, confidential or other proprietary information are

disclosed, then confidentiality is lost forever.  Second, the information that Patriot seeks to protect is unique and has been developed by Patriot over years of doing business. Such information constitutes trade secrets and is entitled to protection under the Indiana Uniform Trade Secret Act ("IUTSA"), Ind. Code § 24-2-3-1 *et seq*.

There is also evidence that the Defendants are irreparably damaging Patriot's goodwill and reputation.  Patriot has been in business since the 1970's and has built up goodwill in its products and with its customers.  Because of Defendants' conduct, Patriot's long time customers are now questioning Patriot's product line and pricing practices.  Because Sterling appropriated and copied Patriot's plans, Sterling can sell virtually identical products at a lower prices.  Customers are now alleging that Patriot has been overcharging for its models and are demanding that it lower its prices to match Sterling.  (See affidavits of Ruiter and Stephenson.)

B.     Injury to Plaintiff versus harm to Defendant.

As discussed earlier, soon after discovering that the Plaintiffs' computer files had been copied to the Defendants' computer system, Sterling took steps to limit the access and use of the Plaintiffs' material.  Among the steps taken was the creation of a "clean room," a room which was not effected or tainted by the copied computer files. Kollat testified that Sterling is not using the copied computer files.  If Kollat is correct, the effect of the recommended injunction will not be greater than what the Defendants were already doing, not using the Plaintiffs' proprietary material.  As a result, the harm that Patriot will suffer in the absence of an injunction is greater than the harm that Defendants might suffer if the Court grants an injunction.  Patriot merely seeks an injunction ordering Defendants to comply with the law.

C.     Likelihood of Success on the Merits.

Patriot is likely to prevail on the merits of its claims against all Defendants. The

7

evidence shows that Defendants are infringing upon Patriot's valid copyrights.  Further, by copying and transferring Patriot's computer files, Patriot's former employees plainly revealed Patriot's trade secrets, confidential and proprietary information.

    D.    <u>Public Interest</u>

Both Congress (in its passage of the Copyright Act) and the Indiana General Assembly (in its enactment of IUTSA) have spoken and expressly provided for injunctive relief in these exact situations. Cases under the Copyright Act and under the IUTSA have consistently granted injunctive relief in such situations. *See e.g.*, *Hyrdraulic Exchange*, 690 N.E.2d at 782; *Ackerman v. Kimble Int'l, Inc.*, 652 N.E.2d 507 (1995). Therefore, public policy is not disserved by the granting of this injunction; rather, the declared policy would be furthered.

V.    <u>Conclusion</u>

Because Plaintiffs have demonstrated at least a reasonable likelihood of success on the merits, that they are irreparably harmed by Defendants using their copyrights and trade secrets, that the threatened injury to them outweighs the harm the injunction may inflict to Defendants, and that granting the injunction will not disserve the public interest, this Court recommends that Plaintiffs' motion for a preliminary injunction be **GRANTED** pursuant to Fed. R. Civ. Pro. 65. [Doc. No. 26].  Accordingly, the Defendants, their agents, employees,  any other individuals within Defendants control or supervision, and all persons or entities in concert with Defendants should be enjoined from or required to do the following:

    1. Using, copying, disclosing, converting, appropriating, retaining, selling, transferring, or otherwise exploiting Patriots' copyrights, confidential information,  trade secrets, or computer files.

    2.  Building or selling any of the models depicted in Exhibits B1, C1, and D1.

    3.  Building any houses in any state unless and until approvals are obtained relating to the manuals prepared by TR Arnold.

    4.  Certify that copied data and materials of Patriot's property, confidential information and trade secrets on computer files and removable media (CD's, DVD's, tapes, etc.) have been deleted or rendered unusable.

    5.  Notify all dealers that models depicted in Exhibits B1 and D1 are no longer in production or for sale.

Further, this Court recommends Plaintiffs post a bond of $200,000 for issuance of the injunction.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  Fed.R.Civ.P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**

**SO ORDERED.**

Dated this 2nd day of December, 2005

                                              s/Christopher A. Nuechterlein
                                              Christopher A. Nuechterlein
                                              United States Magistrate Judge