UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| PATRIOT HOMES, INC. AND | ) | |
|---|---|---|
| PATRIOT MANUFACTURING, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:05-CV-0471-AS |
| | ) | |
| FOREST RIVER HOUSING, INC. | ) | |
| d/b/a STERLING HOMES, | ) | |
| BRENT RAIFSNIDER, DANIEL REED, | ) | |
| WILLIAM MILLIKEN AND STEVEN | ) | |
| RYKER | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM, ORDER, AND OPINION**

I.  Introduction

This matter is before the Court on two separate motions: 1) Defendant Sterling Homes' ("Sterling") Rule 12(b) motion for partial dismissal; and 2) Plaintiffs Patriot Homes, Inc. and Patriot Manufacturing's ("Patriot") motion for preliminary injunction.

On August 24, 2005, this Court referred the motion for preliminary injunction to Magistrate Judge Christopher A. Nuechterlein to conduct an evidentiary hearing and issue a Report and Recommendation. That evidentiary hearing was held on October 3, 2005 and on October 11, 2005. Magistrate Judge Nuechterlein issued his Report and Recommendation on December 2, 2005. Defendants filed a timely objection to the Report and Recommendation and Plaintiffs filed a memorandum in support of the Report

and Recommendation.

The Court will first address Defendant's motion for partial dismissal. It will then address the motion for preliminary injunction, the Report and Recommendation, and objections to the Report.

II. Motion for Partial Dismissal

In its motion for partial dismissal, Sterling Homes advances two primary arguments: 1) because Patriot's requested injunctive relief would establish a monopoly over modular housing designs not permitted by U.S. copyright law, Patriot's complaint must be dismissed to the extent it seeks to enjoin Sterling from building homes substantially similar to its own;[1] and 2) because Patriot has neither alleged nor suffered any "loss" or "damage" as required by statute, its Computer Fraud and Abuse Act ("CFAA") claim (Count Eight, Complaint ¶¶ 82-88) must be dismissed.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is appropriate only if the complaint sets forth no viable cause of action upon which relief

---

[1]There appears to be at least some confusion as to which portions of Count I Sterling seeks to dismiss. According to Patriot's Memorandum in Opposition, "Sterling moves to dismiss Count I (Copyright Infringement)," suggesting that Sterling seeks dismissal of the entire count. (Memorandum in Opposition at 3). Also, Sterling asks that this Court decline to exercise supplemental jurisdiction over Patriot's state law claims, a result that seems appropriate only if Patriot's federal law claims are dismissed in their entirety. *See* 18 U.S.C. § 1367(c). Sterling never unambiguously states that Count I should be dismissed, however. Instead, it consistently frames the requested dismissal in terms of "the extent to which" Patriot seeks *injunctive* relief. Finally, Sterling's motion is styled as a motion for *partial* dismissal. Therefore, the Court will assume that Sterling agrees that Count I should not be dismissed in its entirety.

2

can be granted. Fed. R. Civ. P. 12(b)(6); *Challenger v. Ironworkers Local No. 1,* 619 F.2d 645, 649 (7th Cir. 1980). In assessing the propriety of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court accepts all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them as true. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir.1999). Plaintiffs' claims are subject to dismissal only if it is clear that they can prove no set of facts consistent with the allegations in the complaint that would entitle them to relief. *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir.1999).[2]

> A. <u>Claim for Injunctive Relief</u>

Sterling claims that Patriot's request for injunctive relief must be dismissed "to the extent that Patriot seeks to prohibit Sterling from building homes similar or identical to the houses represented by Patriot's copyrighted floor plans." Motion to Dismiss Reply Memorandum at 5. They assert that, because Patriot did not register its designs as "architectural works" and did not patent its housing designs, Sterling cannot be prevented from building houses "similar or identical to the homes represented by Patriot's copyrighted drawings." Reply Memorandum at 2.

---

[2] Several matters extraneous to the pleadings have been referenced by the parties in their supporting papers. Pursuant to Federal Rule of Civil Procedure 12(b), those matters are not properly before the court on a motion to dismiss, will not be considered by the Court when ruling on this motion, and are considered excluded for purposes of this motion. *See Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

As noted in footnote 1, Sterling does not claim that Patriot failed to state a claim for copyright infringement. Sterling also does not appear to challenge the propriety of all forms of injunctive relief in its motion to dismiss. Instead, Sterling's motion directly addresses the *scope* of injunctive relief that can properly be obtained by Patriot. Because of the significant analytical overlap, this issue will be fully addressed in connection with the motion for preliminary injunction discussed below.

### B. CFAA Claim

Sterling offers two arguments in favor of dismissal of Patriot's CFAA claim: 1) Patriot's CFAA claim should be dismissed because Patriot has neither suffered nor alleged any "loss" that falls within the statute's definition; 2) Patriot's CFAA claim should be dismissed because Patriot failed to allege "damage" as required by statute. Each of these arguments will be addressed in turn.

#### 1. Loss

Sterling argues that Patriot's CFAA claim must be dismissed because Patriot neither alleged nor suffered any "loss" that falls within the statute's definition. 18 U.S.C. Section 1030(g) provides, in relevant part, that:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B).

Under the CFAA, "loss" is defined as "any reasonable cost to any victim, including the

cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). The Seventh Circuit has not interpreted this provision, but the parties have cited several federal district court opinions that offer competing interpretations of "loss." *See, e.g., ResDev, LLC v. Lot Builders Assoc., Inc.*, No. 6:04-cv-1374, 2005 WL 1024743 (M.D. Fla. Aug. 10, 2005); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 474-478 (S.D.N.Y. 2004); *Pacific Aerospace & Electronics, Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1197 (E.D. Wash. 2003). Sterling urges the Court to adopt a narrow definition of the term – one that includes only "a specified type of damage due to an *impairment of the integrity or availability* of data." Reply Memorandum at 5. Patriot urges a broader definition; one that includes "any reasonable cost to any victim." Memorandum in Opposition at 13.

Patriot's only allegation specifically addressing the loss element is as follows: "As a result of Defendant's computer fraud as alleged above, Patriot has suffered monetary losses as well as irreparable harm requiring preliminary and permanent injunctive relief." Complaint at 12, ¶ 88. That allegation is broad enough to encompass almost any "loss" as that term is defined in the cases cited by the parties. The real question is whether that allegation is sufficient to satisfy federal notice pleading standards.

The Seventh Circuit has stated that a "complaint need not spell out every element

5

of a legal theory" to provide adequate notice. *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999) (quoting *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir. 1998)). Moreover, "a plaintiff can plead conclusions as long as those conclusions provide the defendant with minimal notice of the claim." *Scott*, 195 F.3d at 952 (citing *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995)).

The allegations, when read in conjunction with the rest of the complaint, are sufficient for Patriot to carry its burden at this stage of the proceedings. They provide at least minimal notice of the claim, and the Court cannot say that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). In fact, plaintiffs may posit facts which, as long as they are consistent with the complaint, the Court must accept as true. *See Chavez v. Illinois State Police*, 251 F.3d 612, 650 (7th Cir. 2001); *Trevino v. Union Pacific Railroad Co.*, 916 F.2d 1230, 1239 (7th Cir. 1990). Patriot has articulated facts in its supporting brief which are consistent with its complaint and which would seem to satisfy even the narrow definition of loss outlined in *Nexans Wires*.[3] Memorandum in Opposition at 14, 17. Because Patriot's allegations satisfy notice pleading standards and are broad enough to encompass even the narrow definition of "loss" proposed by Sterling, Patriot's claims cannot be dismissed on this basis.

---

[3]The Court, of course, makes absolutely no judgment as to whether these facts can actually be proven. *See Trevino*, 916 F.2d at 1239 (whether plaintiff can establish hypothetical facts is a separate question, not answerable at the pleadings stage).

6

2. Damage

Sterling offers an additional argument for dismissal of Patriot's CFAA claim – that Patriot must allege "damage" to state a civil claim under the CFAA. This argument is advanced most clearly in Sterling's response to Patriot's supplemental submission of authority. (Docket No. 82). Sterling argues that the first sentence of 18 U.S.C. § 1030(g) requires "damage or loss" for a party to have standing, while the second sentence creates "additional requirements" that must be met even if standing exists.[4] Motion to Dismiss Reply Memorandum at 6.

According to Sterling, the second sentence of Section 1030(g) provides that a civil action "may be brought only if the conduct involves 1 of the factors set forth in . . . subsection (a)(5)(B)" of 18 U.S.C. § 1030(g). Motion to Dismiss Reply Memorandum at 6. That is plain enough from the face of the statute. The question is what that sentence requires. Sterling argues that subsection (a)(5)(B) "can only be triggered by conduct described in subsection (a)(5)(A)(i), (ii), or (iii)." Response to Supplemental Authority at 3. Those subsections require, in relevant part: (i) knowingly causing transmission of a program and, as a result of such conduct, intentionally causing *damage* without authorization to a protected computer; or (ii) intentionally accessing a protected computer and, as a result of such conduct, recklessly causing *damage*; or (iii) intentionally

---

[4] Sterling states that "no decision in any jurisdiction, as far as Sterling's counsel is aware, has addressed Sterling's primary argument that 'damage,' within the meaning of the CFAA, must be alleged in order to state a civil claim under the CFAA." Defendants' Response to Supplemental Authority at 3.

7

accessing a protected computer and, as a result of such conduct, causing *damage*. 18 U.S.C. § 1030(a)(5)(A).[5] Therefore, according to Sterling, Patriot must allege "damage" to maintain a civil action under the CFAA. The Court disagrees.

As outlined above, 18 U.S.C. § 1030(g) states that "[a]ny person who suffers *damage or loss* by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief." (emphasis added). If the Court has correctly followed Sterling's logical acrobatics, accepting Sterling's position would effectively rewrite the statute to require an allegation of "damage" in every civil action, regardless of whether "loss" has also been alleged. In other words, the statute would read, roughly: "You can allege 'damage' *or* 'loss' . . . but you must allege 'damage.'" That is clearly incorrect. The second sentence of 18 U.S.C. § 1030(g) makes no reference to subsection (a)(5)(A). Rather, it only refers to the *factors* listed in clauses (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B). There is no "trigger" required. *See C.H. Robinson*, 2005 WL 3077998, at *2 (finding that "a party bringing a civil action under the CFAA must allege both: (1) a violation of one of the listed subsections of Section 1030; and (2) one of the listed *factors* in Section 1030(a)(5)(B)(i)-(v)." (emphasis added)). As Sterling itself points out, "every sentence of the statute must have meaning." Response to Supplemental Authority at 2. Requiring an allegation of "damage" in every action would

---

[5]"Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

render the first sentence of § 1030(g) meaningless.

Furthermore, it is again worth noting that this is a motion to dismiss. Patriot need not "spell out every element of a legal theory" to provide adequate notice. *Scott,* 195 F.3d at 951. Even if the Court accepted Sterling's argument, Patriot would not have to allege the magic word "damage" for this count to withstand dismissal. Viewing the allegations in the light most favorable to Patriot, Patriot's "loss" allegations, which are very broad, provides sufficient notice of a claim for "damage" as defined by the CFAA. Therefore, Patriot's claims cannot be dismissed on this basis. Additionally, it is beyond doubt that Patriot need not actually *prove* any loss or damage at this stage of the proceedings. As such, Sterling's motion to dismiss must be DENIED as it relates to Count VIII.

      C.     State Law Claims

The Court has declined to dismiss Patriot's copyright infringement and CFAA claims. Therefore, the Court will retain jurisdiction over the state law claims. *See* 28 U.S.C. § 1367.

      III.     Motion for Preliminary Injunction

On December 2, 2005, Magistrate Judge Nuechterlein issued a Report and Recommendation on the issue of Plaintiffs' Motion for Preliminary Injunction. Magistrate Judge Nuechterlein recommended that the motion be granted. He further recommended that:

> The Defendants, their agents, employees, any other individuals within Defendants' control or supervision, and all persons or entities in concert with Defendants

should be enjoined from or required to do the following:

> 1. Using, copying, disclosing, converting, appropriating, retaining, selling, transferring, or otherwise exploiting Patriots' copyrights, confidential information, trade secrets, or computer files.
>
> 2. Building or selling any of the models depicted in Exhibits B1, C1, and D1.
>
> 3. Building any houses in any state unless and until approvals are obtained relating to the manuals prepared by TR Arnold.
>
> 4. Certify that copied data and materials of Patriot's property, confidential information and trade secrets on computer files and removable media (CDs, DVDs, tapes, etc.) have been deleted or rendered unusable.
>
> 5. Notify all dealers that models depicted in Exhibits B1 and D1 are no longer in production or for sale.

Report and Recommendation at 8-9. Finally, Magistrate Judge Nuechterlein recommended that Plaintiffs post a bond of $200,000 for issuance of the injunction. Report and Recommendation at 9.

"A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001). To obtain a preliminary injunction, the plaintiffs must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) absent injunctive relief, they will suffer irreparable harm; and (4) the injunction will not harm the public interest. *Joelner v. Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004).

When dealing with dispositive claims or defenses of a party, once a timely

objection has been filed to the magistrate judge's report and recommendation, the district judge must undertake a *de novo* review of the record. 28 U.S.C. § 636(b)(1)(B), (C); Fed.R.Civ.P. 72(b); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The court may accept, reject, or modify the magistrate judge's recommended decision. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999). The court need not conduct a new hearing on the entire matter, but must give "fresh consideration to those issues to which specific objections have been made." 12 Wright & Miller, Federal Practice and Procedure, § 3076.8, at p. 56 (1992 Pocket Part); *See also Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995).

Sterling makes six main objections to Magistrate Judge Nuechterlein's Report and Recommendation: 1) that Item #1 does not comply with Fed. R. Civ. P. 65(d) because it is vague and merely requires Sterling to obey the law, and this will expose Sterling to immediate contempt proceedings upon issuance of the injunction; 2) that Plaintiffs' copyright ownership claims are deficient; 3) that Plaintiffs did not identify the constituent elements of the copyrighted works that are claimed to be original; 4) that because Patriot obtained copyright registrations for technical drawings rather than architectural works and did not patent its housing designs, Defendants cannot be enjoined from creating and selling the architectural works outlined in the drawings; 5) that Plaintiffs did not take reasonable steps to maintain the secrecy of their trade secrets; and 6) that there is no

evidence that the alleged taking was illegal.[6]  Each of these objections will be addressed in turn.

### A. Vagueness of Item #1

Fed. R. Civ. P. 65(d) requires that a preliminary injunction be specific in its terms and set forth in reasonable detail the acts to be restrained.  Sterling claims that Item #1 of the recommended order merely instructs them to obey the law and, therefore, fails to meet the specificity requirement of Rule 65(d).  Sterling requests that Item #1 be eliminated or modified to make clear that Defendants are not prohibited from building or selling any model not depicted in Exhibits B1, C1, or D1.

In support of its objection, Sterling cites *City of Mishawaka, Ind. v. American Electric Power Co., Inc.*, 616 F.2d 976 (7th Cir. 1980); and *Burton v. City of Belle Glade*, 178 F.3d 1175 (11th Cir. 1999).  The injunctions involved in those cases, both found to be insufficiently specific under Rule 65(d), are easily distinguishable from the order proposed by Magistrate Judge Nuechterlein.

The court in *Mishawaka*, for example, noted that "[t]he injunction was drafted by municipal counsel and issued by the trial court without benefit of a hearing as to its nature and scope." *Mishawaka*, 616 F.2d at 990-991.  In contrast, Magistrate Judge Nuechterlein

---

[6]All of Sterling's objections appear to address the first requirement of the preliminary injunction analysis – Patriot's likelihood of success on the merits.  None of the other factors – the existence of an adequate remedy at law, irreparable harm, and the harm to public interest – are explicitly challenged in Sterling's objections.

12

held extensive hearings on the nature and scope of this injunction, and his Report and Recommendation is based on those hearings.

More importantly, the language of Item #1 is more specific and precise than the language used in the *Mishawaka* injunction. In that case, for example, one paragraph of the injunction was "too vague to identify any specific activity which may be subject to the contempt power [because it] merely incorporat[ed] the broad language of Section 2 of the Sherman Act." *Mishawaka*, 616 F.2d at 991. Other portions of the injunction were insufficient, as "[i]t would be difficult to ascertain in advance, for example, what conduct is proscribed by the requirement that the utility treat all its customers fairly, equitably, and on a nondiscriminatory basis." *Id*. Such imprecise language is not present in Item #1, which lists specific proscribed acts and specific categories of information. Item #1 is more than specific enough to satisfy the requirements of Rule 65(d).

B.   Ownership of Valid Copyrights

Sterling argues that Patriot's copyright ownership claim is deficient because Mr. Anderson, the purported author of the copyrighted floor plans, denied creating four of the six floor plans.[7] The record indicates that Patriot is likely to succeed in proving valid ownership of its copyrights. Four of the copyrights in question were "made before or within five years after first publication of the work" and, therefore, "constitute prima

---

[7]Sterling makes no substantive argument on this point in its objections, but merely states that it believes the Report and Recommendation erred by "presum[ing] ownership from the related nature of the copyright subject matter." Defendants' Objections at 6.

facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). As for the remaining two registrations, "the evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." *Id*.; *See* MELVILL B. NIMMER & DAVID NIMMER, 1 NIMMER ON COPYRIGHT § 13.01[A].

Magistrate Judge Nuechterlein found that Patriot proved the validity of all of its copyrights and that Sterling "presented no evidence to show that any of Patriot's copyrights are invalid." Report and Recommendation at 5-6. Sterling offers no support for its argument that Patriot's ownership claims are deficient, and the Court finds no reasons of its own. Therefore, the Report and Recommendation will not be modified on this issue.

## C. Originality of the Copyrighted Works

Sterling argues that Plaintiffs are not entitled to an injunction because Patriot did not identify the constituent elements of the copyrighted works that are claimed to be original. The Court disagrees. As a preliminary matter, everyone seems to have lost sight of the purpose of preliminary injunctive relief. It is not to decide the ultimate merits of the case, but to "prevent irreparable harm to the moving party." *Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006). There is ample evidence in the record, as outlined by Magistrate Judge Nuechterlein, to show that Patriot has a high chance of successfully proving the originality of its copyrights. Furthermore,

Sterling has failed to present any authority that would require the Court to outline every specific "original constituent element" of the copyrighted works. Additionally, Sterling reasserts in its objections the arguments raised in its motion to dismiss relating to Patriot's CFAA claims. Those issues were fully dealt with above and will not be revisited here. Therefore, the Report and Recommendation will not be modified on this issue.

D. Technical Drawings, Architectural Works, and Patents

Sterling argues that, because Patriot did not register its designs as "architectural works" and did not patent its housing designs, Sterling cannot be prevented from building houses "similar or identical to the homes represented by Patriot's copyrighted drawings."[8] Reply Memorandum at 2.

Before addressing Sterling's argument, a brief review of the development of copyright protections for architectural plans is in order. Architectural plans can be copyrighted as technical drawings under 17 U.S.C. § 102(a)(5). *See David & Goliath Builders, Inc. v. Elliot Constr.*, No. 05-C-494-C, 2006 WL 1515618, at *3 (W.D. Wis. May 25, 2006). Architectural works may be copyrighted under 17 U.S.C. § 102(a)(8). *Id*. A work is protected both as an technical drawing and as an architectural work only if the work is registered under both categories. *See* 37 C.F.R. § 202.11(c)(4). The Report and Recommendation states that "Patriot has copyrighted six of its floor plans as 'technical

---

[8]These arguments were also raised in the motion to dismiss addressed above, and the Court will deal with them fully here.

15

drawings.'" Report and Recommendation at 4. The record supports this finding. The copyright registrations appear, on their faces, to show that Patriot copyrighted "technical drawings." *See* Complaint Exhibits 1-6. Additionally, Patriot worded its Complaint to indicate that Patriot registered copyrights for technical drawings. Complaint ¶¶ 14, 34-35. The real issue, then, concerns the scope of protection to be afforded the technical drawings.

A copyright gives the owner the exclusive right to reproduce the copyrighted work. 17 U.S.C. § 106. Anyone who violates the exclusive rights of the copyright owner infringes on the owner's copyright. 17 U.S.C. § 501(a). The copyright protection does not, however, "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Only a patent can protect an idea apart from any original expression. *See* 35 U.S.C. § 101 *et seq.* "Architects typically protect their works through copyright because the utilitarian nature of architectural drawings and buildings makes it difficult for architects to satisfy patent law's novelty requirement." *Nat'l Medical Care, Inc. v. Espiritu*, 284 F.Supp.2d 424, 434 (S.D. W.V. 2003). Prior to 1990, when Congress enacted the Architectural Works Copyright Protection Act ("AWCPA"), "architectural works could be registered only as 'technical drawings.'" *Id*. *See* 17 U.S.C. § 102(a)(5). The AWCPA was enacted to provide clear copyright protection to architectural structures and bring the United States Copyright Act

16

into compliance with the Berne Convention. *Id*. at 435. The AWCPA's enactment did not affect the scope of protection afforded to architectural works registered as technical drawings, however. *Id*. at 434.

The parties disagree on the scope of protection to be afforded an architectural work registered as a technical drawing. Sterling relies on *Demetriades v. Kaufmann*, 680 F. Supp. 658 (S.D. N.Y. 1988). The Court in *Demetriades* held that "although individuals are not free to make unauthorized copies of copyrighted architectural plans, they remain free to duplicate houses depicted in those plans unless and until the designs embodied in such plans are secured by patent." *Id*. at 666. Although the Seventh Circuit has not dealt with this specific issue, the Court is persuaded by the general approach of the *Demetriades* decision. To hold otherwise would be to elevate Patriot's copyrights to patents. Therefore, the Report and Recommendation will be modified on this issue.

However, the parties would be wise to note decisions allowing damage calculations to include profits gained from the construction of works using infringing copies of technical drawings. *See Robert R. Jones Associates, Inc. v. Nino Homes*, 858 F.2d 274, 277-78 (6${}^{th}$ Cir. 1988); *Intown Enterprises, Inc. v. Barnes*, 721 F. Supp. 1263, 1266-67 (N.D. Ga.1989).

     E.    <u>Steps to Maintain Secrecy of Trade Secret Information</u>

Sterling argues that Patriot did not take reasonable steps to maintain the secrecy of information Patriot claims as trade secrets. According to Ind. Code § 24-2-3-2, for

17

information to qualify as a trade secret, it must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Both parties fail to cite a single case that might help the Court determine what steps are reasonable to maintain the secrecy of trade secret information. Nevertheless, it seems likely that Patriot can succeed in satisfying this element of its trade secret claim. The record indicates that: 1) Patriot maintains written computer use policies prohibiting copying or taking computer records except for Patriot's own use; 2) uses passwords and firewalls to protect its computer system; and 3) limits access to relevant information to a need-to-know basis. *See Mangreen Res. and Dev. Corp. v. Nat'l Chemical Co., Inc.*, 87 F.3d 937, 942 (7th Cir. 1996) (evidence sufficient to enable reasonable jurors to conclude that company took reasonable steps to maintain secrecy of trade secret information where employees were forced to sign confidentiality agreements, employees were informed of the secret status of the information, only company employees were allowed access to secret information, and information was identified using coded labels). Therefore, the Report and Recommendation will not be modified on this issue.

F. Illegal Taking

Though Sterling's arguments on this point are somewhat difficult to decipher, the only argument that seems to be raised by the defendant is that individual defendants are charged with a crime and their defense on this issue is, therefore, "hobbled." Defendants' Objections at 13. The Court can decide the issues in this case only on the information

available in the record and not on what *might* have been argued if certain individual defendants were not facing criminal charges. Therefore, the Report and Recommendation will not be modified on this issue.

　　IV.　Conclusion

　　The Defendants' motion for partial dismissal (Docket No. 29) is **DENIED**. The Plaintiffs' motion for preliminary injunction is **GRANTED**. The Report and Recommendation is **ADOPTED** in part and **MODIFIED** in part. Furthermore, because the Plaintiffs have demonstrated a reasonable likelihood of success on the merits and are entitled to a preliminary injunction, the Court hereby orders the following:
The Defendants, their agents, employees, any other individuals within Defendants' control or supervision, and all persons or entities in concert with Defendants are enjoined from or required to do the following:

1. Using, copying, disclosing, converting, appropriating, retaining, selling, transferring, or otherwise exploiting Patriots' copyrights, confidential information, trade secrets, or computer files.

2. Certify that copied data and materials of Patriot's property, confidential information and trade secrets on computer files and removable media (CDs, DVDs, tapes, etc.) have been deleted or rendered unusable.

**SO ORDERED**.
**Date:** June 21, 2006　　　　　　　　　　　　　　　 **S/ ALLEN SHARP**
　　　　　　　　　　　　　　　　　　　　　　　　　　**ALLEN SHARP, JUDGE**
　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT**