UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PATRIOT HOMES, INC. and | ) | |
| PATRIOT MANUFACTURING, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:05-CV-471 AS |
| | ) | |
| FOREST RIVER HOUSING, INC. d/b/a | ) | |
| STERLING HOMES, BRENT RAIFSNIDER, | ) | |
| DANIEL REED, WILLIAM MILLIKEN and | ) | |
| STEVEN RYKER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant, Forest River Housing, Inc. d/b/a Sterling Homes' ("Sterling" or "Defendant"), Motion for Partial Summary Judgment (Docket No. 113). The issues have been fully briefed and the Court heard oral argument on this motion in South Bend, Indiana.

Defendant Sterling argues in its motion that it is entitled to summary judgment on Count II and Counts IV through VII of Patriot Homes, Inc. and Patriot Manufacturing, Inc.'s ("Patriot" or "Plaintiffs") Amended Complaint.

### I. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding a motion for

summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper. In this situation, there can be "'no genuine issue of any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## II. FACTUAL BACKGROUND

Defendant Sterling has explicitly stated that for purposes of this motion Sterling is not disputing the facts as alleged by Plaintiffs. Def's Memo. 114 at 2, n. 1. Therefore, as to this

2

motion, the Court incorporates as its factual background the facts submitted by Patriot. Furthermore, this Court finds that due to the fact that not all claims are addressed by this partial motion for summary judgment and in light of the extensive briefs and voluminous evidence submitted, it is not practicable at this time to specifically lay forth the material facts, nor would doing so materially expedite the adjudication. *See Patrick Schaumburg Automobiles, Inc., v. Hanover, Inc., Co.*, 452 F.Supp.2d 857, 867 (N.D.Ill. 2006). Therefore, in the interest of judicial economy, the facts are discussed herein as is relevant for the purposes of this motion.

### III.  DISCUSSION

**A.     Summary Judgment as to Count II**

**1.     Misappropriation of Trade Secrets**

Patriot alleges that Sterling's conduct amounts to violations of the Indiana Uniform Trade Secrets Act, I.C. 24-2-3-1 *et. seq* ("IUTSA"), despite Patriot's reasonable efforts to keep their trade secrets confidential (Complaint at ¶ 59, 60). However, Defendant Sterling argues that it is entitled to summary judgment on Count II because Patriot's purported trade secret/confidential information is readily ascertainable where anyone may obtain copies of Plaintiffs' Systems Manuals, Quality Assurance Manual, and state submissions by simply requesting copies from state agencies. Def's Memo. 114 at 1, 3-7. Sterling argues that the Manuals themselves include everything Patriot claims is trade secret/confidential, except for Patriot's bills of material, pre-writes, pricing information, and order forms, which are also readily ascertainable. *Id.* In the alternative, Sterling suggests that Plaintiffs do not take

reasonable measures to maintain the confidence of their alleged "trade secrets," and that Sterling cannot be vicariously liable for the alleged actions of Patriot's former employees because there is no *respondeat superior* liability under the IUTSA. *Id.* at 1-2, 7-13.

A trade secret is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

I.C. 24-2-3-2; *see also*, *Northern Electric Co., Inc., v. Torma*, 819 N.E.2d 417, 426 (Ind.Ct.App. 2005).

Neither party contests that the information at issue derives independent economic value. However, as mentioned, Sterling alleges that the information is not trade secret because it is readily ascertainable by proper means by other persons who can obtain economic value from its use, and because Patriot failed to employ reasonable efforts to maintain its secrecy.

Patriot has raised genuine issues of material fact regarding whether their trade secrets are readily ascertainable by proper means. First, Patriot has shown that not <u>all</u> of their trade secret information can be received simply by requesting copies from state agencies, because not <u>all</u> of the information was submitted to state agencies, nor was all of the information available in the public domain. *See Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 920 (Ind. 1993). Specifically, Patriot's AutoCAD files stored on their computer system contain much

4

more information than that which Patriot includes in their submissions to states, including detailed production drawings.  Plfs' Memo. 153 at 4-5.  Even Sterling admitted that only "*nearly all information*, which Plaintiffs allege is trade secret/confidential and was misappropriated by Defendants, are contained [in] the Systems and Quality Assurance Manuals inspected and copied by Sterling."  Def's Memo. 115 at 7 (emphasis added).

Second, "even if information potentially could have been duplicated by other proper means [i.e. requesting it from state agencies], it is 'no defense to claim that one's product could have been developed independently of plaintiff's, if in fact it was developed by using plaintiff's proprietary designs.'" *U.S. Land Services, Inc., v. U.S. Surveyor, Inc.,* 826 N.E.2d 49, 64 (Ind.Ct.App. 2005) (citing *Amoco Prod. Co. v. Laird*, 622 N.E.2d 912 (Ind. 1993)).  Here, it is no defense that Sterling requested the information from state agencies, where the facts show Sterling used Patriot's designs.  Plfs' Memo. 153 at 5, 9-10, 12.

Third, this Court finds that it is questionable whether this information was readily available as public information within the context of trade secret law.  *See Taco Cabana Intern., Inc., v. Two Pesos, Inc.*, 932 F.2d 1113, 1124 (5th Cir. 1991); *Billmayer v. City of Kalispell*, 2007 WL 1418666 (Mont. 2007).  Here, Defendant's own expert witness, Robert Tanger, admitted that state submissions (including a systems manual, a quality control manual, substantiating calculations, and model drawings) are treated as confidential and that it would be unethical for one manufacturer to use another manufacturer's system manual to create its own state submissions.  Plfs' Memo. 153 at 3.  Patriot also understood that the state submissions were confidential, because prior to obtaining Patriot's state submissions, Sterling

5

even admitted that Patriot was the only source to obtain Patriot's Quality Control Manuals and Systems Manuals.  Plfs' Memo. 153 at 5.

Finally, another fact requiring the denial of summary judgment, is that the compilation of the information submitted to the states was not readily available in electronic format.  Plfs' Memo. 153 at 4-6.  At this stage, these electronic compilations presumably have independent value from the hard copies because having possession of them increased Sterling's efficiency in engineering and building modular homes by Sterling's not having to expend the time, money, or effort in creating the detailed electronic files from the hard copies.  *See Northern Electric Co., Inc., v. Torma*, 819 N.E.2d 417, 426 (Ind.Ct.App. 2005).  As to Patriot's bills of material, pre-writes, pricing information, order forms, and information regarding Energymate Model best-sellers, much of this information was also included in Patriot's electronic files, and this Court finds that Patriot has raised genuine issues of material fact which suggest that this information is unique, constitutes compilations of Patriot's particular sales data, and has been developed by Patriot over years of doing business.  Plfs' Memo. 153 at 5-6.  This is not a close call for purposes of summary judgment, and the Court cannot hold as a matter of law that Patriot's alleged trade secrets were readily ascertainable by proper means.

Patriot has also raised genuine issues of material fact regarding whether Patriot employed reasonable efforts to maintain the secrecy of the alleged trade secrets.  Patriot only submitted the required documents to the proper state agencies, and not to third parties.  Plfs' Memo. 152 at 7.  Further, Patriot protects their proprietary information by maintaining written computer use policies prohibiting copying or taking computer records except for

6

Patriot's use, protects their computer system with password-entry and firewalls, limits access to relevant information to a need-to-know basis, and maintains paper records in locked cabinets under the supervision of the employees who use those records. Plfs' Memo. 153 at 5-7. This Court recognizes the many retrospective and creative suggestions by Sterling regarding possible precautions that Patriot could have taken, *see* Def's Memo. 114 at 8-13; however, the IUTSA requires the owner of alleged trade secrets to make reasonable, though not overly extravagant, measures to protect its secrecy, and absolute secrecy is not required. *Northern Electric*, 819 N.E.2d at 427. Here, reading the facts in the light most favorable to Patriot, the measures taken by Patriot were reasonable. *See Zemco Manufacturing, Inc., v. Navistar International Transportation Corp.*, 759 N.E.2d 239, 246 (Ind.Ct.App. 2001). Moreover, the Court agrees with Patriot that even if Patriot had employed all of the precautionary measures suggested by Sterling, those measures would likely not have prevented Patriot's former employees from surreptitiously downloading information from computer files and stealing other confidential information and using it to jump-start Sterling's business. *See Northern Electric*, 819 N.E.2d at 428 (*citing Syntex Ophthalmics, Inc. v. Novicky*, 214 U.S.P.Q. 272, 277 (N.D.Ill. 1982), *aff'd*, 701 F.2d 677 (7th Cir. 1983) (holding that the misappropriation was the result of misplaced trust, not lax security)).

    **2.**    **Liability under IUTSA and Recovery of Attorneys' Fees or Exemplary Damages under IUTSA**

Sterling states that as a matter of law "Sterling cannot be vicariously liable for the actions of the Individual Defendants." Def's Memo. 114 at 13. While Sterling is correct that *respondeat superior* liability is displaced by the IUTSA, Patriot's claim survives under the

7

IUTSA to the extent that Sterling can be held directly liable for the misappropriation of trade secret/confidential information.  *See Infinity Prods., Inc., v. Quandt,* 810 N.E.2d 1028 (Ind. 2004).  To make the determination as to Sterling's direct liability it will take a jury.  The facts suggest Sterling turned a blind eye to what was happening[1] when shortly after Sterling acquired Patriot's former employees, Sterling had created models and began building modular homes similar to Patriot's, and forensic analysis of Patriot's and Sterling's computer systems revealed Sterling's theft and usage.  Plfs' Memo. 153 at 5-6, 11-12.

Sterling also argues that even if the Court denies summary judgment on the claim for trade secret misappropriation, the Court should still rule that Patriot cannot recover attorneys' fees or exemplary damages from Sterling under the IUTSA.  Def's Memo. 114 at 14.  Sterling claims that it was "innocently contaminated" with Plaintiffs' alleged information, and that it "acted immediately" to rid itself of Plaintiffs' information upon learning that Sterling might possess it.  *Id.*  In support of its position, Sterling primarily relies on Kollat's reaction to the lawsuit, Sterling's creation of the "clean room," and Sterling's eventual hiring of an independent third party, T.R. Arnold and Associates, to recreate everything from scratch.  *Id.* at 14-16.  Sterling states "[p]laintiffs have no evidence suggesting that anyone associated with Sterling, at the time of the alleged misappropriation (namely only Roger Kollat), was aware anyone had or was copying or using Plaintiffs' files or information."  *Id.* at 16.

Under the IUTSA, courts can award exemplary damages and/or attorney's fees "[i]f

---

[1] *See Ajaxo, Inc., v. E*TRADE Group, Inc.*, 37 Cal.Rptr.3d 221, 257 (Cal.App. 2005).

8

willful and malicious misappropriation exists." I.C. 24-2-3-4(c); I.C. 24-2-3-5.  Although Sterling tries to shed a positive light on its attempts to cleanse itself from Patriot's information, it is clear that Sterling received notice of Patriot's complaint in early June of 2005 when Mr. Kollat ordered a clean room, and yet, months later, the "clean room" was still tainted and a third-party was eventually hired.  Def's Memo. 115 at 19-21.  Further, it is debatable whether Sterling is still using trade secrets/confidential information stolen from Patriot.  Deposition testimony of the former employees, Reed, Milliken, Raifsnider, and Ryker, reveals that they asserted their Fifth Amendment right against self incrimination in response to questions regarding whether they had spoken together (including discussions with Mr. Kollat) about removing documents and computer files from Patriot and taking them to Sterling; and, whether it was fair to say that Production prints currently being used by Sterling were based on AutoCAD drawings taken from Patriot.  Plfs' Memo. 153 at 9-10, 12.  Since this Court is permitted to draw negative inferences from the assertion of privileges, it does so with respect to the testimony of the former employees.  *See Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 758 (7th Cir. 2005) (holding that the Fifth Amendment does not forbid inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them).  As in *Ajaxo*, this Court finds that at the very least, a jury could conclude that Sterling acted in willful and conscious disregard for the rights of Patriot by participating in the theft/misappropriation, willfully took information that Patriot's former employees provided Sterling so that it might gain financially, and prolonged its course of thievery.  *See Ajaxo, Inc., v. E\*TRADE Group, Inc.*, 37 Cal.Rptr.3d 221, 256-57

(Cal.App. 2005). Therefore, Defendant's motion for summary judgment as to Patriot's claims for attorney fees and damages under the IUTSA is denied.

**B.     Summary Judgment as to Count IV (Theft and Conversion)**

Defendant Sterling argues that it is entitled to summary judgment on Count IV because Sterling never exerted control over Patriot's property, never intended to deprive Patriot from using the property, and did not deprive Patriot from use of any property. Def's Memo. 114 at 2, 16-17. Sterling concedes that the property at issue was "copied," not destroyed or taken from Patriot. *Id.* Sterling states that "Plaintiffs have, and have always had, the information they allege was stolen and converted." Def's Memo. 114 at 18. Further, Defendant's argue that Patriot's "information" was not damaged, nor did it constitute "property" within the meaning of the statutes. *Id.* at 18-19.

A person who suffers pecuniary loss as the result of a criminal theft or conversion may bring a civil action against the person who caused the loss. I.C. 34-24-3-1. To prove that Sterling committed criminal conversion, Patriot must establish that Sterling knowingly or intentionally exercised unauthorized control over Patriot's property. I.C. 35-43-4-3(a). To prove theft, Patriot must establish that Sterling knowingly or intentionally exerted unauthorized control over the property of Patriot, with intent to deprive Patriot of any part of its value or use. I.C. 35-43-4-2(a).

This Court has previously determined that the claims for theft/conversion of the tangible medium embodying Patriot's work are not preempted; yet, any allegations concerning the unlawful retention of Patriot's intellectual property rights were preempted.

10

(Docket No. 200). Without revisiting the preemption issue, the Court considers whether the remaining claims survive summary judgment as a matter of law.

Notably, both theft and conversion carry the elements of knowingly or intentionally exercising unauthorized control over Patriot's property. However, the crime of conversion does not require an "intent to deprive the other person of any part of its value or use." Nor does the crime of theft require property to be taken to the exclusion of the Plaintiffs, rather it requires "intent to deprive Patriot of any part of its value or use."

Patriot's claims for conversion and theft survive summary judgment where the facts indicate that Sterling's former employees had access to and discussed the theft of Patriot's confidential state submissions, technical drawings for modular homes, three-dimensional computer models for modular homes, and hard copy confidential sales and cost information, as well as Patriot's media, including computer or CAD files, CDs, DVDs, and/or diskettes. Plfs' Memo. 153 at 9-10, 12. The deposition testimony of Patriot's former employees show that they discussed removing documents and computer files from Patriot and taking them to Sterling (and may still be using Production prints based on AutoCAD drawings taken from Patriot), as a means to jump-start Sterling's production of modular homes to the detriment of Patriot, a primary competitor. Defendants did more than just merely copy information. *See FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303-04 (7th Cir. 1990). Patriot's executive vice-president and general counsel, Mr. Like, testified that by taking the property, Sterling produced designs "identical" to Patriot's Energymate modular homes, and Sterling got a year's head-start in its business. Plfs' Memo. 153 at 5. Certainly genuine issues exist

11

as to whether Defendants had the requisite knowledge or intent, and the facts suggest that Sterling did in fact exert unauthorized control over the property of Patriot. Further, there is no doubt that any unauthorized taking of the tangible mediums embodying Patriot's information by a competitor in the industry would ultimately deprive Patriot of some part of its value and/or use, especially where such use went to the creation of similar models sold for less money. Plfs' Memo. 153 at 14. *See Coleman v. Vukovich*, 825 N.E.2d 397, 407 (Ind.Ct.App. 2005). As such, Sterling's motion for summary judgment as to Patriot's claims for conversion and theft is denied.

**C.    Summary Judgment as to Count V and as to Count VI (Tortious Interference with Contract and Prospective Business Advantage)**

This Court previously found that any of Patriot's tortious interference claims which depended solely upon Sterling's misappropriation of trade secrets were preempted under the IUTSA, but that Patriot's tortious interference claims were not preempted by the Copyright Act. (Docket No. 200). The issue of preemption has been decided and no circumstances suggest that the issue should be revisited, therefore the Court considers the Defendant's alternative summary judgment argument.

Presently, Sterling argues that it is entitled to summary judgment on Counts V and VI, tortious interference with contract and prospective business advantage, because Patriot cannot demonstrate that Sterling acted illegally, wrongfully, maliciously, or without justification in soliciting sales from common dealers and customers. Def's Memo. 114 at 22-23. Sterling suggests that it was solely motived by the legitimate business purpose of competing for sales, and that it is natural for Patriot and Sterling to compete for the same

dealers and customers. *Id.*

To state a claim for tortious interference with contractual relations, a plaintiff must show: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994); *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind.Ct.App. 2000) (citations omitted).

A claim for tortious interference with prospective business advantage consists of the following elements: (1) the existence of a valid business relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference in the relationship; (4) the absence of any justification; and (5) damages resulting from the defendant's interference. *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 876 (Ind.Ct.App. 1998); *Johnson v. Hickman*, 507 N.E.2d 1014, 1017 (Ind.Ct.App. 1987). Whether a defendant acted illegally is also relevant in adding proof of a cause of action. *Harvest Life Ins. Co.,* 701 N.E.2d at 876; *see also Great Escape, Inc., v. Union City Body Co., Inc.*, 791 F.2d 532, 533 (7th Cir. 1986).

The critical element at issue here for both tortious interference claims is whether Sterling's acts were justifiable, in which case any "interference" is not tortious. *See Flintridge Station Associates v. American Fletcher Mortg. Co.*, 761 F.2d 434, 440-41 (7th Cir. 1985). Also of importance, is whether any conduct of Sterling found to interfere with a

13

prospective business advantage is sufficiently wrongful to satisfy the illegality requirement. *Harvest Life Ins. Co.,* 701 N.E.2d at 876.

Under Indiana law, the "absence of justification" element is affirmatively established only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another. *Bilimoria Computer Sys., L.L.C. v. America Online, Inc.*, 829 N.E.2d 150, 156-57 (Ind.Ct.App. 2005). Justifiability of conduct involves consideration of the following factors: (a) the nature of the defendant's conduct; (b) the defendant's motive; (c) the interests of the plaintiff with which the defendant's conduct interferes; (d) the interests sought to be advanced by the defendant; (e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff; (f) the proximity or remoteness of the defendant's conduct to the interference; and (g) the relations between the parties. *Id.* at 156. (citations omitted). The overriding question is whether the defendant's conduct has been fair and reasonable under the circumstances. *Id.* The existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability. *Flintridge Station Associates,* 761 F.2d at 441 (defining unjustified as "disinterested malevolence" or "malicious [conduct] unmixed with any other and exclusively directed to injury and damage of another"); *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind.Ct.App. 2000).

In this case, viewing the record evidence in the light most favorable to Patriot, there is no justification for Sterling's actions. In this case, it is clear from Sterling's conduct that Sterling was doing more than simply competing with Patriot and promoting its own

14

legitimate business interests by attempting to sell its product to potential customers.  In fact, what Sterling was doing, was reproducing Patriot's products from Patriot's manuals previously stolen by Patriot's former employees prior to leaving the employment of Patriot, then recasting Patriot's products as its own at discounted prices to Patriot's customers.

This Court firmly supports the underlying basis in Indiana law favoring competition, and drawing restrictions on former employees narrowly; however, at the same time, condoning the behavior displayed by Defendants would essentially allow the destruction of ethical business practices and healthy competition.  Sterling's intent was not to entice customers to buy from Sterling as opposed to its competitor, Patriot.  The facts indicate that Sterling's intent was to eliminate the time, money, and effort required for engineering and building modular homes, by copying Patriot's models proven over the years to be popular among consumers, then to sell the models at a price cheaper than Patriot's.  Not to mention, the facts show that at one time Sterling tried to purchase Patriot, and after Patriot declined such offers, Patriot's former employees were hired by Sterling.  Plfs' Memo. 153 at 8.  Along with the employees, went Patriot's trade secrets/confidential information.  Defendants were not pursuing a "legitimate" business interest or competing for sales, they were acting to harm Patriot by gaining the market share with Patriot's product; therefore, Defendants actions were not fair and reasonable under the circumstances, nor were they justified under Indiana law.

Similarly, Defendants argument as to there being no illegality fails.  Although Defendants contend that this case is similar to *Economation, Inc., v. Automated Conveyor Systems, Inc*., 694 F.Supp. 553 (S.D.Ind. 1988), the Court disagrees.  In *Economation*, the

15

court stated:

> In this case, it is difficult, if not impossible, to characterize the defendant's innocuous conduct of hiring qualified salesmen and competing for available business as "wrongful," especially in light of the court's finding that the duty does not expand to cover this case. Indiana courts undeniably favor an open and competitive marketplace. ACS' conduct in this case was wholly consistent with those principles of competition. The actions of hiring qualified salesmen to sell your product and paying commissions on sales which were the result of the experience, expertise and hard work of those salesmen is not "wrongful" conduct sufficient to support a finding of tortious interference with a business relationship.

*Economation,* 694 F.Supp. at 562.  Here, Sterling did not hire employees to sell its product and make profits as a result of experience, expertise and hard work; instead, Sterling hired Patriot's former employees armed with not only the knowledge, but the tools, for reproducing Patriot's product without having to invest the hard work, time, and money to do so.  The evidence reveals that modular home manufacturers do not simply copy each other.  Plfs' Memo. 152 at 22.  The means used certainly seems to rise to the required level of wrongfulness.  *See Great Escape, Inc.*, 791 F.2d at 542-42.  As such, the Court denies Defendants' motion for summary judgment.

**D.     Summary Judgment as to Count VII (Unfair Competition)**

Defendant Sterling argues that it is entitled to summary judgment on Count VII because no legally protected information was misappropriated; therefore, similar to the tortious interference claims, this claim also fails.  Def's Memo. 114 at 2, 23-24.  Defendant also argues that summary judgment is appropriate because there was no illegal solicitation and there was no evidence of predatory pricing.  Def's Memo. 114 at 24.

To the extent that Defendants repeat their arguments with regard to summary judgment as to some claims, this Court incorporates herein its previous determinations regarding the inappropriateness of summary judgment as to Patriot's claim for misappropriation of trade secrets/confidential information and Patriot's tortious interference claims.  Furthermore, this Court previously held that the tort claim of unfair competition is not displaced by IUTSA; nor, is it preempted by the Copyright Act to extent that the claim requires proof of elements in addition to and different from the Copyright Act, such as a claim for "passing off." (Docket No. 200).  Therefore, such issues will not be rehashed.

Furthermore, Indiana has held that the tort of unfair competition is much broader than simply the palming off of ones goods or services as that of someone else's, but includes actions for the interference with a contract or business relationship, as well as for predatory price cutting.  *Bartholomew County Beverage Co., Inc., v. Barco Beverage Corp., Inc.*, 524 N.E.2d 353 (Ind.Ct.App. 1988).  Unfair competition by predatory pricing consists of cutting prices "for the primary purpose of destroying a competing business."  *Bartholomew County,* 524 N.E.2d at 358.  Here, not only are Sterling's floor plans identical to Patriot's, but Sterling prices the models for less money, pawning them off as the same models as Patriot's for less.  Plfs' Memo. 153 at 14.  One of the modular home's consumers even asked (after having first reviewed Patriot's modular home designs and then subsequently receiving a brochure provided by Sterling) whether Sterling was a division of Patriot because all of the homes were exactly the same.  *Id.*  Furthermore, modular home dealers question whether Patriot is price-gouging them and whether Patriot's products are competitively priced.  *Id.* at

17

15.  Patriot has had customers demand lower prices to match Sterling's and/or simply bought Sterling's products (some in violation of exclusive agreements) because the same house cost less money.  *Id.*  In light of these facts and the other incredulous acts of Defendants, whether Sterling priced its products below an appropriate measure of cost for the purpose of eliminating Patriot from the market and engaged in unfair competition is a question for the jury.

## IV.  CONCLUSION

Based on the foregoing, Defendant, Forest River Housing, Inc. d/b/a Sterling Homes' Motion for Partial Summary Judgment (Docket No. 113) is **DENIED.**

**SO ORDERED**.

**DATED: September 20, 2007**

                                              S/ ALLEN SHARP
                                          **ALLEN SHARP, JUDGE**
                                          **UNITED STATES DISTRICT COURT**